# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DONTAI LONG, #336-812 | * |
| Plaintiff | * |
| v. | *   Civil Action No. GLR-13-1782 |
| WARDEN BOBBY P. SHEARIN, et al. | * |
| Defendants | * |
| | *** |

## MEMORANDUM

Pending in the above-captioned case is Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 19), Plaintiff's Response in Opposition (ECF No. 23), and Defendants' Reply (ECF No. 28). Also pending is Plaintiff's Motion for Temporary Restraining Order[1] (ECF No. 3) and Notice of Default[2] (ECF No. 17). The Court finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.

## Background

Plaintiff alleges that on October 31, 2013, he and his cell mate were found guilty of violating institutional rules 105 (possession of a weapon) and 406 (possession of contraband). ECF No. 1 at p. 3. The item found in Plaintiff's cell that was the impetus for the disciplinary charges was a pair of finger nail clippers. Id. The penalty imposed for the disciplinary violation was 180 days of segregation, loss of 120 days of good conduct credit, and an indefinite loss of

---

[1] Plaintiff's Motion for Temporary Restraining Order seeks relief which has already been granted and will, therefore, be denied. See ECF No. 28.
[2] Defendants' response to the Complaint was timely, therefore, Plaintiff's request for default judgment shall be denied.

visits. Id. at Att. 1, p. 5. Following the adjustment hearing, Plaintiff's case was reviewed by the Reduction in Violence Committee and the additional sanction of a 30-day loss of appliances was approved by Warden Shearin. Id.

Plaintiff's cell mate, Todric Speaks, appealed his disciplinary conviction to the Inmate Grievance Office ("IGO"), but prior to the hearing Randy Watson, Director of Inmate Programs and Services, wrote a memorandum to Warden Shearin vacating the adjustment conviction. ECF No. 1 at Att. 1, p. 1. Watson noted that Speaks's conviction was based on the fact that the nail clippers were found in the cell to which he was assigned and, therefore, were in his constructive possession, but that the charging officer's report provided no explanation as to how nail clippers could in fact be used as a weapon. Id. As designee of the Deputy Secretary of Operation, Watson exercised his authority to vacate Speaks's conviction for possession of a weapon as clearly erroneous. Watson also reduced Speaks's conviction for possession of contraband to an incident report, concluding that Speaks was in constructive possession of the nail clippers after the deadline established in an institutional directive for relinquishing all nail clippers. Id.; see also p. 2. [3]

Plaintiff contacted Watson via certified mail on April 28, 2013, seeking the same reversal of his adjustment conviction that was provided to Speaks. Id. at p. 6. Plaintiff also filed an Administrative Remedy Procedure request ("ARP") with Warden Shearin seeking the same remedy provided to Speaks, but his ARP was dismissed for procedural reasons.[4] Id. at pp. 7 –8. As relief Plaintiff seeks monetary damages for every day he spent on disciplinary segregation and "everything that was given to Mr. Speaks." ECF No. 1 at p. 3.

---

[3] The Chief of Security for North Branch Correctional Institution ("NBCI"), Keith Arnold, issued a Memorandum requiring all inmates to turn in all fingernail clippers because they were being used to manufacture weapons. The deadline for turning in fingernail clippers was July 13, 2012. ECF No. 1 at Att. 1, p. 2.

[4] The reason provided was that inmates may not seek relief through an ARP for disciplinary hearing procedures and decision. ECF No. 1 at Att. 1, p. 7.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

<u>Exhaustion of Administrative Remedies</u>

The Prisoner Litigation Reform Act provides, in pertinent part:

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions-of-confinement claim. See Porter v. Nussle, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resorting to the administrative remedy procedure. See Booth v. Churner, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this Court. See Jones v. Bock, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir.2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. See Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. See Woodford v. Ngo, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. Id. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. See Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. See Chase v. Peay, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Chase, 582 F. Supp. 2d at 530; Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); Booth v. Churner, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L. Ed. 2d 958 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendants have raised the affirmative defense of failure to exhaust administrative remedies in the instant case. They maintain that although Plaintiff filed a complaint with the IGO appealing the adjustment conviction, that complaint was administratively dismissed without prejudice because of the pendency of this civil action, noting that "adjudication of the merits of the underlying complaint should not proceed at the same time in separate judicial and administrative proceedings with the risk of inconsistent adjudications and the waste of limited administrative resources." ECF No. 19 at Ex. 3. Defendants further assert that Plaintiff's failure to complete administrative review of his claim prior to instituting this civil action entitles them to

dismissal of the claims against them. ECF No. 19 at pp. 9 – 10. Defendants state that Plaintiff appealed his adjustment conviction to the IGO on June 26, 2013, seven days after the instant case was filed. Id. at Ex. 3.

In his Opposition Response, Plaintiff states that he wrote to the IGO regarding his adjustment conviction "several times" beginning in March 2013 through May 2013, but never received a response. ECF No. 23 at p. 2. He claims he became aware of Watson's memorandum regarding Speaks's adjustment conviction after he was released from disciplinary segregation[5] and filed an ARP seeking similar relief which was dismissed and he appealed the dismissal to the Commissioner of Correction at the same time he sent a certified letter to Watson. Id. Plaintiff states he never received a response from either of those two efforts at obtaining relief and filed another appeal of the adjustment conviction to the IGO in June. He claims he never heard anything from the IGO and assumed he would not, just as he had not previously and therefore filed the instant Complaint with this Court. Id. Plaintiff asserts that his efforts to have his grievance addressed satisfies the requirement of exhaustion, but asserts that in the alternative his Complaint should be dismissed without prejudice to allow for the IGO to address his grievance. Id. at pp. 2 – 3.

Plaintiff included as exhibits with his Complaint evidence to support his allegation that he indeed made the effort to appeal his adjustment conviction which did not garner a substantive review of his claims. In their Reply, Defendants assert that Plaintiff has provided no evidence of his attempts to appeal his adjustment conviction and that his claims that he contacted the IGO are vague at best. ECF No. 28. Much of the evidence regarding the administrative process in this case appears to establish a form over substance approach by correctional officials. There is no

---

[5] In their Reply, Defendants erroneously state that it was the memorandum requiring the relinquishment of fingernail clippers that Plaintiff did not know about until after his disciplinary segregation time had expired. ECF No. 28.

6

suggestion of what action Plaintiff was required to take after he discovered his co-defendant was exonerated and the time for appealing his adjustment conviction to the IGO had expired. Rather than simply addressing the inequity of the matters brought to their attention, Plaintiff's complaints were simply administratively dismissed until Watson was made aware of the problem. This Court, therefore, concludes that to the extent Plaintiff's claims were not administratively reviewed prior to the institution of this case, it was not due to his inaction or failure to attempt to avail himself of the process, but because remedies were not made available to him. Thus, the merits of Plaintiff's claim shall be addressed herein.

## Due Process Claim

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written

7

statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Where, as here, an improper adjustment conviction is later overturned, the loss of good conduct credits restored, and the record expunged, any due process violation that occurred is cured. See Morisssette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) (no denial of due process if the error is corrected) (citing Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991)); Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) ("administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred").

Plaintiff's claim for monetary damages to compensate him for the time he improperly spent on disciplinary segregation as well as his request for an order requiring back pay for money lost as a result of loss of his job, must fail. There is no question that Plaintiff had a liberty interest in maintaining earned good conduct credits. It is well established that the revocation of good conduct credits may not take place without first providing the inmate with the protections of procedural due process. See Wolff, 418 U.S. at 557. His interest in his housing assignment and prison job assignment are not protected interests.

8

The touchstone for determining whether or not a particular housing assignment within the prison invokes a liberty interest has been explained by the Supreme Court. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Given this analysis, it is easy to conclude that Plaintiff's confinement to disciplinary segregation was not a significant hardship. Confinement on disciplinary segregation does not begin the level of significant hardship contemplated by the applicable standard. The suspension of Plaintiff's visiting privileges for six months does not change the analysis, see White v. Keller, 438 F.Supp. 110, 115 (D.Md. 1977) (prisoners and their visitors do not have a constitutional right to prison visitation but a permanent ban may implicate the Eighth Amendment), nor does the loss of his job, see Meachum v. Fano, 427 U.S. 215, 224 (1976) (no liberty interest in prison programming absent significant hardship). Thus, Plaintiff is not entitled to the injunctive relief or the monetary damages he seeks and Defendants are entitled to summary judgment in their favor on the due-process claim.

### Equal Protection Claim

Plaintiff also claims his equal protection rights were abridged when he was not provided the same relief as his co-defendant. ECF Nos. 1 and 3. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). In cases such as this one where no suspect criterion such as race is involved, the proper inquiry is whether the

9

statute or regulation serves a legitimate state interest and whether the challenged classification is rationally related to it. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989).

While the delay in providing Plaintiff with the relief to which he was entitled appears to have been the result of an apparent unwillingness by officials to simply right a wrong without requiring compliance with procedural rules, the fact remains that Plaintiff received the same relief as his co-defendant from the same source. There is no evidence that Plaintiff's adjustment conviction was allowed to remain intact as the result of discriminatory animus. Additionally, the task of managing the volume of administrative complaints through application of procedural rules is, as a general rule, a legitimate state interest even when some injustice occurs as a result. A different conclusion might be appropriate if Plaintiff had not received any relief simply because his request for relief was not made in the proper form. Defendants are also entitled to summary judgment in their favor on this claim.

A separate Order follows.

March 5, 2014

/s/
                           
George L. Russell, III
United States District Judge